**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Civil No. 01-1092 (DWF/AJB)

In re Chronimed Inc.
Securities Litigation

**MEMORANDUM**
**OPINION AND ORDER**

---

Charles S. Zimmerman, Esq., and Carolyn G. Anderson, Esq., Zimmerman Reed, 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402-4123; Gregg M. Fishbein, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Daniel L. Berger, Esq. and Avi Josefson, Esq., Bernstein, Litowitz, Berger & Grossman, 1285 Avenue of the Americas, New York, NY 10019, on behalf of Plaintiff Judith Barclay, on behalf of herself and all others similarly situated.

Richard A. Lockridge, Esq., Gregg M. Fishbein, Esq., and Gregory J. Myers, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Evan J. Smith, Esq., Brodsky & Smith, 11 Bala Avenue, Suite 39, Bala Cynwyd, PA 19004; and Brian Felgoise, Esq., Felgoise Law Office, 230 Broad Street South, Suite 404, Philadelphia, PA 19102, on behalf of Plaintiff Rajagopal Ramchandran, on behalf of himself and all others similarly situated.

Charles S. Zimmerman, Esq., and Carolyn G. Anderson, Esq., Zimmerman Reed, 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402-4123, on behalf of Plaintiffs Benjamin Rubin, on behalf of himself and all others similarly situated, and Thomas Stunda, on behalf of himself and all others similarly situated.

Richard A. Lockridge, Esq., Gregg M. Fishbein, Esq., and Karen M. Hanson, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, on behalf of Plaintiff Ivan W. Russell, on behalf of himself and all others similarly situated.

Richard A. Lockridge, Esq., Gregg M. Fishbein, Esq., Karen M. Hanson, Esq., and Gregory J. Myers, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, on behalf of Plaintiffs Robert Hunter and Valhalla Investment Partnership, L.P., on behalf of itself and all others similarly situated.

Richard A. Lockridge, Esq., Gregg M. Fishbein, Esq., and Karen M. Hanson, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; David C. Harrison, Esq., and Richard Bemporad, Esq., Lowey Dannenberg Bemporad & Selinger, The Gateway, One Lexington Avenue North, White Plains, NY 10601, on behalf of Plaintiff Joseph Gross.

MAY 16 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Richard A. Lockridge, Esq., Karen M. Hanson, Esq., and Gregory J. Myers, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Jeffrey C. Block, Esq., and Chauncey D. Steele, IV, Esq., Berman DeValerio Pease Tabacco Burt & Pucillo, One Liberty Square, 8th Floor, Boston, MA 02109, on behalf of Plaintiff Gordon M. Cathey, on behalf of himself and all others similarly situated.

Charles S. Zimmerman, Esq., and Carolyn G. Anderson, Esq., Zimmerman Reed, 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402-4123; Randall H. Steinmeyer, Esq., Milberg Weiss Bershad Hynes & Lerach, 401 B Street, Suite 1700, San Diego, CA 92101-5050, on behalf of Plaintiff Jeff Latz, on behalf of himself and all others similarly situated.

Charles S. Zimmerman, Esq., and Carolyn G. Anderson, Esq., Zimmerman Reed, 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402-4123; Gregg M. Fishbein, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Daniel L. Berger, Esq., Avi Josefson, Esq., Bernstein Litowitz Berger & Grossmann, 1285 Avenue of the Americas, New York, NY 10019, on behalf of Judith Barclay, on behalf of herself and all others similarly situated.

Peter W. Carter, Esq., Heather J. Klaas, Esq., and Mitchell W. Granberg, Esq., Dorsey & Whitney, 50 6th Street South, Suite 1500, Minneapolis, Minnesota 55402, on behalf of Defendants Chronimed Inc., Maurice R. Taylor, II, Henry F. Blissenbach, and Gregory H. Keane.

Richard A. Lockridge, Esq., Gregg M. Fishbein, Esq., and Karen M. Hanson, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Jeffrey Leibell, Esq., Bernstein Litowitz Berger & Grossmann, 1285 Avenue of the Americas, New York, NY 10019, on behalf of Movant Third Point Management Company, LLC.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 26, 2002, pursuant to Defendant's Motion to Dismiss the Amended and Consolidated Class Action Complaint. By their Complaint, Plaintiff alleges securities fraud in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.[1] In addition, Plaintiff alleges additional claims of fraud

[1] On June15, 2001, a putative class action was filed against Chronimed. After eight (continued...)

against the individual Defendants, as "controlling person[s] of the Company" as defined under Section 20 of the Exchange Act, 15 U.S.C. § 78t(a). Defendants bring the current motion seeking to dismiss the Complaint against them, contending that Plaintiff has failed to plead with sufficient particularity so as to establish the requisite element of scienter. For the reasons outlined below, the Court denies Defendants' Motion to Dismiss.

**Background**

Chronimed is a Minnesota corporation that provides specialty pharmaceuticals and disease management assistance to individuals with chronic health conditions, such as HIV/AIDS and organ transplants. In 1996, Chronimed acquired StatScript, a retail pharmacy chain, with the intention that it would compliment Chronimed's already existing mail-order subscription business and also provide "a rapid entry into the HIV/AIDS treatment market." From the time of purchase and through August 2001, StatScript operated as a wholly-owned subsidiary of Chronimed with headquarters located in Overland Park, Kansas.

For fiscal years 1997, 1998, 1999, 2000, and 2001, Chronimed reported revenues of $88,207,000, $115,614,000, $168,624,000, $222,497,000, and $297,925,000, respectively. From 2000 to 2001, the revenues of Chronimed's retail business steadily increased. Indeed, Plaintiff states that Chronimed's retail business comprised 45-47% of the company's gross revenues during the class period and 104% and 91% of the company's net income for 2000 and the third quarter of 2001, respectively. Plaintiff states that StatScript "provide[d] the majority of the

---

[1](...continued)
other identical actions were filed, the cases were consolidated into the current action, naming Third Point Management Company LLC ("Plaintiff") as the lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(B). On November 8, 2001, Plaintiff filed the Amended and Consolidated Class Action Complaint on behalf of all persons who purchased Chronimed securities from October 27, 1999, through June 13, 2000.

company's retail growth through the second half of 2000" and that the retail segment of Chronimed's business "consisted largely of StatScript."

On June 14, 2001, Chronimed issued a press release announcing that it intended to adjust reported revenues, earnings, and accounts receivable for fiscal year 2000 and the first three quarters of 2001. In the release, Chronimed explained that "problems in its StatScript retail computer accounting systems and procedures allowed certain prescriptions to be inadvertently recorded as revenue more than once" and that during the course of posting cash receipts against accounts receivable, certain receivables were found without a corresponding payment or bill to the payor. In addition, Chronimed explained that because the suspected computer systems and procedures had been installed in June 1999, it believed the problem was confined to fiscal years 2000 and 2001.

By a June 21, 2001, press release, Chronimed announced that it estimated the overstatements to amount to no more than $3,000,000 for fiscal year 2000 and $4,000,000 for fiscal year 2001. In addition, Chronimed announced that it would have to increase its accounts receivable by a one-time charge of no more than $7,000,000 to compensate for "doubtful accounts." On August 14, 2001, Chronimed announced that it would consolidate StatScript's support functions into the operations at Chronimed's headquarters in Minnetonka, Minnesota.

On October 12, 2001, Chronimed issued its financial restatements for 2000 and the first three quarters of 2001. The actual overstatement of revenues amounted to $3,390,000 for 2000 and $4,513,000 for the first three quarters of 2001. Chronimed calculates that such overstatements represent only a 1.5% and 2.1% reduction of revenues for the relevant periods, while the actual revenues remained 32% and 34% greater than the previous fiscal year revenues. However, Plaintiff sets forth a very different characterization of the overstatement for fiscal year

2000. Plaintiff states that the $3,400,000 overstatement represented 9.2% of the company's gross profits. Significantly, Plaintiff also posits that Chronimed understated a net loss from continuing operations by $4,600,000 or 362.3%, resulting in a net income loss of $4,100,000 rather than the reported $562,000 gain and a net loss per share of $0.39 or 390%.

On June 14, 2001, when Chronimed announced the impending restatement, the price of Chronimed stock closed at $9.35 per share. When trading resumed on June 22, 2001, the stock closed at $4.74 per share.

The focus of the current motion centers around the extent to which Chronimed knew or should have known of the accounting errors or problems that resulted in the need for the restatement. The parties agree that there were three general accounting problems: (1) that certain prescriptions were submitted to insurance carriers more than once, *e.g.*, if a refill was requested before a scheduled refill date, then the same prescription might be submitted twice, once on the earlier date and once on the regularly scheduled date; (2) that certain prescriptions were recorded as sold at full price despite a previously arranged discount rate; and (3) that certain accounts receivable were not reconciled with cash posted or a bill to the payor, resulting in an inflated accounts receivable amount.

Plaintiff contends that the errors were due primarily to the accounting software utilized by Chronimed. From the time that Chronimed acquired StatScript, StatScript used the McKesson Chain Host software system to record pharmacy prescription sales; and beginning in or around November 1999, StatScript incorporated the IDX software system to manage accounts receivable. Plaintiff maintains that the Chain Host system failed to account for discounted pricing and indiscriminately allowed for "double-booking" and that the IDX and Chain Host systems were not compatible resulting in the overstatement of accounts receivable.

According to Plaintiff, Chronimed knew that its financial reports were inaccurate given the problems with the accounting software. From October 27, 1999, through June 30, 2000, Defendant Taylor was the Chief Executive Officer ("CEO") of Chronimed.[2] Defendant Blissenbach replaced Taylor as CEO, effective July 1, 2000. Prior to that time, Blissenbach served as President and Chief Operating Officer of Chronimed. Defendant Keane served as Vice President of Finance for Chronimed from March 1999, through February 2000, at which point, Keane was appointed Chief Financial Officer of Chronimed.

Plaintiff alleges that Defendants Taylor and Blissenbach did not delegate responsibility, but rather "ran the show" and "made all the decisions." Approximately 30 to 45 days after the end of each month, Defendant Blissenbach and sometimes other members of Chronimed's management team held meetings with the senior managers of Chronimed's business segments in order to review financial reports and forecasts. Tim Jacobs, StatScript's Director of Operations, and Perry Anderson, StatScript's Vice President, attended such meetings at Chronimed.

Plaintiff alleges that, on several occasions, Witness 1, a former StatScript Information Technology Manager, reported the double-booking problem to Jacobs and Anderson. In response to such reports, Anderson and Jacobs told Witness 1 that StatScript had to continue using the McKesson Chain Host program because McKesson distributed drugs to Chronimed at a discount. Witness 1 left the employ of StatScript in January 2000. Accordingly, Plaintiff maintains that such reports occurred before January 2000.

---

[2] Upon resigning from the position of CEO of Chronimed, Taylor assumed the position of CEO and Chairman of the Board for MEDgenesis, a wholly-owned subsidiary of Chronimed.

In addition, Plaintiff contends that in late August 2000, Witness 6, a former Assistant Manager of StatScript Accounts Receivable, and Heather Philipps, another assistant manager, reported the accounts receivable problem to Jacobs and Anderson. During the first week in September 2000, Jacobs, Anderson, Phillipps, Witness 4 - a former StatScript Accounts Receivable Department Clerk, and Mary Orem - StatScript's Accounts Receivable Manager, attended a meeting. According to Witness 6, as a result of the meeting, StatScript hired 20 temporary clerks to analyze all unposted cash receipts and to make appropriate corrections to the records of accounts receivable. During the third week of September 2000, Anderson and Jacobs are alleged to have told Steve Miller, Chronimed's Director of Third-Party Administration, of the cash posting problem. Within the corporation's hierarchy, Miller reported to Defendant Blissenbach.

Plaintiff contends that Defendants were reckless in accepting and reporting monthly reports of StatScript's revenue figures from StatScript headquarters, without independent verification of their accuracy. Plaintiff maintains that, especially given StatScript's substantial contribution to Chronimed's revenues, Chronimed was reckless in not receiving StatScript's sales information on-line and/or not receiving sales data directly from StatScript pharmacies. Moreover, Plaintiff contends that Defendants knew, at least by September 2000, if not before January 2000, by virtue of their management style and the number of meetings at which both StatScript and Chronimed managers were present, that the accounting software was unreliable, and StatScript's monthly financial reports were inaccurate. As a result, Plaintiff alleges that, by their recklessness, Defendants "knowingly" posted income that was not earned or collectible, in violation of Generally Accepted Accounting Procedures ("GAAP").

By its current motion, Defendants seek to have the Amended and Consolidated Class Action Complaint dismissed, contending that Plaintiff has failed to plead its case with sufficient particularity as required under the Reform Act and Fed. R. Civ. P. 9(b) and so as to properly allege the requisite element of scienter.

**Discussion**

**1. Motion to Dismiss**

**a. Standard of Review**

Generally speaking, in deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, in the context of a case raising claims of securities fraud on behalf of a class, the Court must also consider the complaint in light of the heightened pleading standard established by the Private Securities Litigation Reform Act ("the Reform Act"), 15 U.S.C. §§ 78u-4 and 78u-5. Under 15 U.S.C. § 78u-4(b)(2), a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." As such, the Court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute." *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001). And, while a plaintiff is generally entitled, under Fed. R. Civ. P. 12(b)(6), to all reasonable inferences that may be drawn from the complaint, a claim of securities fraud can only survive if the allegations "collectively add up to a strong inference of the required state of mind." *Id.*

**b. Issues**

i. Section 10(b) Claims

Plaintiff has alleged a claim of securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), which states that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2001). In order to bring a successful claim of securities fraud, a plaintiff must establish the following elements: (1) material misrepresentations or omissions; (2) made with scienter; (3) in connection with the purchase or sale of securities; (4) upon which Plaintiff relied; and (5) that proximately caused Plaintiff's injuries. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1533-34 (8th Cir. 1996). While not explicitly stated within the statute or corresponding rule, scienter is a crucial element to a successful claim and the element which is the crux of the current motion before the Court.

"Scienter" is "the intent to deceive, manipulate, or defraud." *Florida State Bd. of Admin.*, 270 F.3d at 653 (citations omitted). Scienter may be established by evidence of knowing or intentional practices to deceive, manipulate, or defraud. *Alpern*, 84 F.3d at 1534. Mere negligence or even gross negligence is not sufficient to establish scienter; however, a showing of recklessness may also satisfy the scienter requirement. *Id.* In *Florida State Bd. of Admin.*, the Eighth Circuit defined recklessness to be:

> highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id*. at 654.

As the Court has stated, the Reform Act requires that the allegations of a complaint of securities fraud show a *strong inference* of scienter. Such a showing can be made with allegations of motive and opportunity. *Id.* at 660. If the motive or opportunity is alleged to be "unusual or heightened," then such allegations are especially relevant to whether the Complaint meets the standard under the Reform Act. *Id.* Allegations of motive or opportunity can also be relevant to a showing of recklessness. *Id.* However, if a Complaint makes no allegation of motive or opportunity, whether heightened or not, "then other allegations tending to show scienter would have to be *particularly strong* in order to meet the Reform Act standard." *Id.* (emphasis added).

The Amended Class Action Complaint in the current action presents a close call for the Court; however, the Court finds that Plaintiff's allegations create a strong inference that Defendant Chronimed acted recklessly in issuing inaccurate financial statements for fiscal years 2000 and the first three quarters of 2001. Defendant maintains that Plaintiff's allegations are conclusory and lack the specificity that, if proven, could establish a finding of recklessness. While the Court agrees that liability should not attach if indeed it is established that Chronimed's awareness of the accounting problems was a result of negligence or mistake, the Court finds that Plaintiff's allegations, if proven, could establish otherwise.

The parties agree that Plaintiff has made no allegations of motive or opportunity. What Plaintiff has alleged, in part, is that: (1) on more than one occasion, and before January 2000, Witness 1 reported the accounting deficiencies to Jacobs and Anderson; (2) from August to September 2000, Witness 6 and Phillipps reported the accounts receivable problems to Jacobs and Anderson who then hired a team of temporary clerks to evaluate and correct the accounting records; (3) by the end of September 2000, Jacobs and Anderson reported the accounts receivable problem to Steve Miller of Chronimed; (4) before and at the time of the misstatements, StatScript was a profitable, if not the most profitable, segment of Chronimed's retail business; (5) Before and at the time of the misstatements, Blissenbach held monthly meetings with Chronimed business managers, including Jacobs and Anderson, in order to review financial reports and forecasts; (6) Steve Miller also reported to Blissenbach; and (7) Blissenbach and Taylor are close managers who "make all the decisions."

Defendants support their position by citing individual paragraphs of the Complaint and explaining why each is insufficient to establish the requisite element of scienter. Defendants are correct in arguing that the position of the individual Defendants within the company is insufficient to establish the requisite scienter. *See, e.g., Chill v. General Elec. Co.*, 101 F.3d 263, 270-71 (2d Cir. 1996). Defendants are also correct that the mere fact that a restatement was necessary and that a GAAP violation occurred are insufficient, on their own, to establish the requisite scienter. *Id.* Moreover, the Court agrees that there are parent/subsidiary relationships where a parent would not be liable for the recklessness of its subsidiary. *Id.* Yet, the relationship between Chronimed and Statscript has yet to be established as so distant that no scienter could be established. To the extent that the Court finds merit in any of Defendants' positions with respect to individual allegations, however, the Court must take the Complaint as a whole, and, in doing

so, the Court finds that the totality of the allegations raises a sufficient specter of scienter so as to meet the threshold under the Reform Act. *See, e.g., Norwood Venture Corp. v. Converse Inc.*, 959 F. Supp. 205, 208-09 (S.D.N.Y. 1997) (finding sufficient inference of scienter under Reform Act based on allegations of specific facts which were circumstantial evidence of knowing behavior).

Defendants contend that in order for Plaintiff's allegations to meet the required level of specificity, they must specifically allege at which meeting or by what report the individual Defendants and thus Chronimed became aware of the accounting deficiencies. While Plaintiff is unable to direct the Court to a specific meeting at which the knowledge of the accounting problems was transferred from StatScript to Chronimed, Plaintiff has identified a period-from January 2000 through June 2001-after StatScript directors became aware of the problems and during which Chronimed and StatScript directors met monthly to discuss financial reports and forecasts. While such allegations are arguably imprecise, the Court finds that they provide sufficient particularity given the closed nature of such meetings. In light of Plaintiff's other allegations, *i.e.*, the relationship between StatScript and Chronimed and the alleged reports within StatScript and the September 2000 response, the Court finds that, reading the Complaint as a whole, Plaintiff has sufficiently alleged a strong inference that Chronimed acted recklessly in issuing inaccurate financial statements.

As the Court stated above, a plaintiff is generally entitled to all reasonable inferences; yet under the Reform Act, a plaintiff must establish a strong inference of scienter. Indeed, the Court recognizes that there may be an equally plausible set of circumstances in this case by which no finding of scienter could be made. For example, even if Defendants knew of the accounting deficiencies as early as January 2000 or as late as September 2001, it does not follow necessarily

that Defendants were reckless by not announcing the impending restatement until June 2001. The ultimate trier of fact may find that any knowledge that Defendants had did not include the scope or nature of the problem. Depending upon what Defendants knew, when they knew it, and how they responded to such information, a trier of fact could as easily determine that Defendants did not act with recklessness as it could determine to the contrary. Moreover, a developed record may establish that knowledge of the accounting problems traveled no further than StatScript's directors, perhaps in an effort to maintain StatScript's perceived success in the eyes of its new parent company, Chronimed. There are various sets of circumstances that could be uncovered to explain who knew what and when they knew it. Nevertheless, at this stage of the litigation, the Court finds that Plaintiff has made sufficient allegations of scienter, and to dismiss them based on an undeveloped record and the mere possibility of an alternative explanation would be premature.

ii. Section 20(a) Claims

By its Complaint, Plaintiff also alleges claims against the individual defendants for violations of Section 20(a) of the Securities Exchange Act of 1934. The parties agree that the Court's ruling on whether to dismiss Plaintiff's 10(b) claims dictates its ruling on whether to dismiss its 20(a) claims. Accordingly, the Court declines to dismiss Plaintiff's 20(a) claims.

iii. Conclusion

It is the Court's opinion that it is in the best interests of the parties to negotiate a resolution of this dispute among themselves. As the parties may already be aware, Magistrate Arthur J. Boylan is available to assist in the negotiation of a settlement should the parties find such services to be helpful. If the Court may be of assistance in this matter, the parties should

contact Lowell Lindquist, Calendar Clerk for Judge Donovan Frank at 651-848-1296, or Kathy Thobe, Calendar Clerk for Magistrate Judge Arthur J. Boylan at 651-848-1210.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant Chronimed's Motion to Dismiss the Amended and Consolidated Class Action Complaint (Doc. No. 15) is **DENIED**.

Dated: May 16, 2002

DONOVAN W. FRANK
Judge of United States District Court