## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE CHRONIMED INC. ) | |
| SECURITIES LITIGATION ) | Master File No. |
| ) | 01-CV-1092 (DWF/AJB) |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) | |
| ) | |

### LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF SETTLEMENT, THE PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### INTRODUCTION

Lead Plaintiff Third Point Partners Management (hereinafter "Plaintiff" or "Lead Plaintiff"), by its counsel, respectfully submits this memorandum in support of its motion for (i) final approval of the settlement ("Settlement")[1] reached in the above-captioned action, as well as the Plan of Allocation, and (ii) an award of attorneys' fees and reimbursement of expenses to Plaintiff's counsel.

The Court certified this action as a Class Action for purposes of settlement by order dated March 15, 2004.[2]

---

[1] The Settlement is set forth in the Stipulation and Agreement of Settlement, dated March 11, 2004, and its exhibits (the "Stipulation of Settlement"). Because this document was submitted to the Court in advance of the preliminary approval hearing on March 15, 2004, it is not being resubmitted at this time.

[2] The Class consists of all persons and entities who purchased or otherwise acquired the common stock of Chronimed Inc. ("Chronimed") from October 27, 1999, through June 13, 2001, inclusive, (the "Class Period"). Excluded from the Class are the Defendants, the members of the family of each of the Individual Defendants, officers and/or directors of Chronimed, parents subsidiaries and affiliates of Chronimed, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

The Settlement, which also was preliminarily approved by the Court on March 15, 2004, provides for the settlement of the Class' claims against Chronimed Inc. ("Chronimed") and certain Individual Defendants in exchange for a cash payment of $2,200,000.00. In conjunction with preliminary approval of the Settlement, the Court directed distribution of a Notice of Pendency of Class Action, Hearing on Proposed Settlement and Attorneys' Fee Petition and Right to Share in the Settlement Fund (the "Notice") to the members of the Class informing them of the terms of the proposed Settlement, the proposed Plan of Allocation, and Plaintiff's counsel's intent to apply for up to one-fourth (25%) of the Gross Settlement Fund as attorneys' fees and for reimbursement in an amount not to exceed $135,000 for out-of-pocket expenses. The Notice sent to members of the Class also advised them of their right to opt out of the Class or to object to the proposed Settlement and fee request.

Plaintiff, through its Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP, and Liaison Counsel, Lockridge Grindal Nauen P.L.L.P. (collectively "Plaintiff's counsel"), now respectfully request that the Court grant final approval to the Settlement, approve the Plan of Allocation, and award one-fourth (25%) of the Gross Settlement Fund as attorneys' fees and award $135,000 as reimbursement of expenses, as set forth herein. The fee and expense request is within the range awarded by Courts in other complex securities class actions.

Confirming the fairness and reasonableness of the Settlement and fee and expense request is the favorable reaction of the members of the Class. Not one objection to the Settlement (or to the request for attorneys' fees or expenses) has been received, not one

request for exclusion has been received and the time for serving and filing any such objections or request for exclusion has expired.

## PROCEDURAL AND FACTUAL BACKGROUND

### I.   THE PARTIES AND CLAIMS ASSERTED

This action (the "Action") was commenced with the filing of several complaints beginning on June 15, 2001.  The Amended & Consolidated Class Action Complaint ("Complaint") in this case was brought on behalf of a class consisting of all persons who purchased or otherwise acquired the common stock of Chronimed from October 27, 1999 through June 13, 2001 (the "Class Period"), inclusive and asserted claims for relief against Chronimed and the Individual Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  The Complaint alleges, among other things, that Chronimed published materially false and misleading financial results for all of fiscal year 2000 and the first three quarters of fiscal year 2001 because Defendants, ignoring warning signs that cast doubt on the reliability of the reported financial results of StatScript, the business segment that accounted for a substantial percentage of the Company's income from continuing operations, failed to establish and maintain accounting and reporting systems and procedures sufficient to reasonably assure that StatScript reported financial results in conformity with Generally Accepted Accounting Principles ("GAAP").  Chronimed and the Individual Defendants moved to dismiss the Complaint on January 8, 2002, and on May 16, 2002, the Court denied that motion and sustained the Complaint in its entirety.

## II.    THE SETTLEMENT

Prior to entering into the Stipulation of Settlement, Plaintiff's counsel conducted an investigation relating to the claims and the underlying events and transactions alleged in the Complaint.   They analyzed the claims and researched the applicable law with respect to the claims asserted and Defendants' potential defenses thereto.   Plaintiff's counsel interviewed and deposed several witnesses and reviewed hundreds of thousands of pages of documents produced by Defendants.   Plaintiff's counsel also consulted with a damages expert.   After evaluating the information obtained during this discovery and their damages expert's analysis concerning issues of materiality, causation and the amount of damages sustained by the Class, Plaintiff and Plaintiff's counsel decided to pursue settlement discussions that ultimately resulted in an agreement to settle this case. The terms were reached as a result of arm's length negotiations over a period of several months.   It was only after careful consideration of the respective positions and additional negotiations that agreement was reached to settle the Action on the terms of the proposed Stipulation of Settlement.

In preliminarily approving the Settlement, the Court by Order dated March 15, 2004, certified this action to proceed as a class action for the purposes of settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of the Class.   Excluded from the Class are the Defendants, the members of the family of each of the Individual Defendants, officers and/or directors of Chronimed, parents subsidiaries and affiliates of Chronimed, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

A total of $2,200,000 in cash will be paid on behalf of Defendants.

III.    **NOTICE TO THE CLASS**

On March 15, 2004, Plaintiff, by its counsel, moved the Court for an Order  (1) granting preliminary approval of the Stipulation of Settlement;  (2) directing distribution to Class members of the Notice of Pendency of Class Action, Hearing on Proposed Settlement and Attorneys' Fee Petition and right to Share in Settlement Fund ("Notice of Pendency"); (3) directing publication of a Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing ("Summary Notice") in The Wall Street Journal; and (4) directing distribution of the proposed form of Proof of Claim form ("Proof of Claim") to potential Class members with the Notice of Pendency.  Plaintiff's motion was granted in all respects.

On March 29, 2004, the Notice of Pendency and Proof of Claim approved by the Court's March 15, 2004 Order were mailed by the Garden City Group ("GCG"), the Court-appointed claims administrator, to 199 potential Class members and to 2,979 brokerage firms, banks, institutions and other nominees.  See Affidavit of Jack R. Digiovanni at ¶¶ 3, 4. ("Digiovanni Aff.").  A copy of the Notice of Pendency and Proof of Claim, as mailed, is attached to the Digiovanni Aff. as Exhibit A.

To respond to inquiries from potential Class members, GCG established a toll-free Interactive Voice Response system to accommodate potential claimants.  This system became operational March 29, 2004.  As of June 7, 2004, GCG had received a total of 67 calls, out of which 9 potential claimants left messages and/or requests to speak with GCG administrators for assistance.  All of such calls were responded to in a timely manner.

Digiovanni Aff. at ¶ 5.   On April 2, 2004, the Summary Notice, also approved by the Court's March 15 Order, was published in the national edition of <u>The Wall Street Journal</u>. Digiovanni Aff. ¶ 6, Ex. C.

As of June 7, 2004, GCG had received 4,318 names and addresses of potential Class members from individuals or brokerage firms, banks, institutions and other nominees, in the form of lists, labels, e-mails and disks requesting that Claim Packets be mailed to these individuals.   Digiovanni Aff. at ¶ 7.   Also, GCG, had received 768 bulk requests from brokers and other nominee holders for Claim Packets to forward to their customers.   <u>Id.</u>   In the aggregate, 8,370 Claim Packets were disseminated to potential Class members by first class mail.   Digiovanni Aff. at ¶ 8.

In addition to providing terms of the Settlement and informing Class members of Plaintiff's counsel's intent to request up to one-fourth (25%) of the Gross Settlement Fund as attorneys' fees and for up to $135,000 as reimbursement of expenses, the Notice of Pendency and the Summary Notices advised Class members of the June 18, 2004 hearing, and of their right to object to the Settlement or Plaintiff's counsel's request for attorneys' fees and expenses.   Any objections to the Settlement or the requested fees and expenses were to be filed with and received by the Clerk of Court on or before June 8, 2004.   At the time of the filing of the instant motion and supporting pleadings, no objections had been received.   <u>See</u> Affidavit of Jack R. Digiovanni ("Digiovanni Aff.")at ¶ 9; Affidavit of Gregg M. Fishbein ("Fishbein Aff.") at ¶ 9.

## ARGUMENT

I.   **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE FINALLY APPROVED.**

The Court preliminarily approved the Settlement on March 15, 2004, and scheduled a final settlement hearing for June 18, 2004, to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved. Because notice to the Class and an opportunity for objections have been given, the Court may now consider final settlement approval. Fed. R. Civ. P. 23(e); White v. Nat'l Football League, 836 F. Supp. 1458, 1468 (D. Minn. 1993), aff'd, 41 F.3d 402 (8th Cir. 1994); In re Employee Benefits Plans Sec. Litig., No. 3-92-708, 1993 WL 330595 at *6-7 (D. Minn. June 2, 1993) (Fishbein Aff. Ex. I); Holden v. Burlington Northern Inc., 665 F. Supp. 1398, 1402-03 (D. Minn. 1987).

A.   **The Law Favors Settlement**

There is a "strong policy to encourage settlement of disputes." Pfizer v. Lord, 456 F.2d 532, 543 (8th Cir.), cert. denied, 406 U.S. 976 (1972); ("[t]he policy of the law encourages compromise to avoid the uncertainties of the outcome of litigation as well as the avoidance of wasteful litigation and the expense incident thereto"). See also Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); Holden, 665 F. Supp. at 1405.

This policy is especially applicable to class action litigation, which is notoriously complex . See, e.g., Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Other courts agree:

> In the class action context in particular, 'there is an overriding public interest in favor of settlement.' Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977). Settlement of the complex disputes often involved in class actions minimizes the

litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

Armstrong  v. Bd of Sch. Dir. of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980) overruled on other grounds 134 F.3d 873 (7th Cir. 1998).  See also Bell Atlantic Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993); Weinberger, 698 F.2d 61, 73 (2d Cir. 1982).

## B.    Standards for Approval of Settlement

Federal Rule of Civil Procedure 23(e) requires court approval of a dismissal or compromise of an action brought pursuant to, or where the court has certified a class pursuant to, Rule 23.  The court is a fiduciary of the rights of absent class members.  See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1148 (8th Cir. 1999); Van Horn v. Trickey, 840 F.2d 604, 606 (8th Cir. 1988).  The Supreme Court has cautioned, however, that in determining whether to approve a settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." Carson v. Amer. Brands, Inc., 450 U.S. 79,  88 n.14 (1981).  See also Cotton v. Hinton, 559 F.2d at 1330 ("The trial judge, absent fraud, collusion or the like, should be hesitant to substitute its own judgment for that of counsel"); Grunin v. Amoco Oil Co., 513 F.2d 114, 123-24 (8th Cir. 1975).   To be approved under Rule 23(e), a proposed class settlement must be fair, adequate and reasonable. Petrovic, 200 F.3d at 1148; Van Horn, 840 F.2d at 606; Grunin, 513 F.2d at 123.

## C.    Factors to be Considered

In determining whether a settlement is fair, reasonable and adequate to the Class, the most important factor for a court's consideration is the balance between the relief obtained and the likelihood of success on the merits.  Buchet v. ITT Consumer Fin.

Corp., 845 F. Supp. 684, 691 (D. Minn. 1994), amended by 858 F. Supp. 944 (D. Minn. 1994); Carson, 450 U.S. at 88 n.14; Van Horn, 840 F.2d at 607.   Other factors the court should consider include:   the complexity, expense, and likely duration of further litigation; the experience of counsel; the negotiation process; the extent of discovery and stage of the proceedings; and the reaction of the Class.   Van Horn, 840 F.2d at 607; Holden, 665 F. Supp. at 1407.

Each of these factors is discussed below and supports approval of the Settlement.

### 1.      The Relief Obtained Balanced by the Likelihood of Success on the Merits

As one court has noted in the context of complex litigation, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." W. Virginia v. Chas. Pfizer & Co., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) (citing instances in which settlements were rejected by the court and plaintiff ultimately lost at trial or recovered less than the amount of the proposed settlement).

The likelihood of recovery involves the weighing of the strength of a plaintiff's case on the merits against the relief offered in the settlement and the potential recovery. See, e.g., Weinberger, 698 F.2d at 79-81.   See also Albert Conte & Herbert Newberg, Newberg on Class Actions § 11.44 at 121-27 (4th ed. 2002).

Plaintiff and Plaintiff's counsel believe that Plaintiff could have prevailed on all claims at trial and on appeal.   However, they also recognize that any litigation is fraught with risk.   This case involved difficult issues of liability, loss causation and damages. While Plaintiff's counsel have confidence that a jury would have found in favor of the Class, a trial would likely have required lengthy testimony by expert witnesses about

complex matters and the admission of hundreds of documents.   Given the issues involved, there is necessarily some uncertainty about whether Plaintiff would have prevailed before a jury.   In addition, Plaintiff potentially faced additional dispositive motions by Defendants, which would have necessarily included considerable risk and expenditure of time and money. See, e.g.,  In re Digi Int'l Sec. Litig., Nos. 00-3162, 00-3227, 2001 WL 753869 (8th Cir. July 5, 2001).

In sum, the complexities and uncertainties that are characteristic of class action securities litigation in general, and this case in particular, led Plaintiff and Plaintiff's counsel to conclude that the Plaintiff should settle and compromise the claims.   The Settlement provides all members of the Class with an immediate benefit without the uncertainty and delay of taking the case to trial.

**2.      The Complexity, Expense and Likely Duration of the Litigation would be Considerable were the Action to Continue**

The ability of plaintiffs to avoid delay and expense, and reap the benefits of settlement sooner, rather than later, weighs heavily in favor of settlement. See, e.g., Petrovic, 200 F.3d at 1149; DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1177 (8th Cir. 1995), cert. denied, 116 S. Ct. 1544 (1996); Spencer v. Comserv Corp., [1986-1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) 93,124 (D. Minn. Dec. 30, 1986).   As another court observed in analyzing a securities litigation settlement:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "It has been held proper to take the bird in the hand instead of a prospective flock in the bush."

Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974) (quoting Chas. Pfizer & Co., 314 F. Supp. at 743).

If the parties do not settle now, they face the prospect of contentious and costly litigation that could drag on for several years.  The Settlement provides Plaintiff and the Class an opportunity to obtain a portion of their provable damages now, while avoiding the delay and expense of further litigation.

### 3.    The Proposed Settlement was the Product of Informed, Good Faith Negotiations between Experienced Counsel.

The view of experienced counsel favoring the settlement is accorded "great weight" in appraising the fairness and adequacy of a proposed settlement.  DeBoer, 64 F.3d at 1178; White, 836 F. Supp. at 1477.  Counsel for the Class collectively have substantial experience in complex class action litigation, including numerous nationwide securities class actions.  Counsel for the Class firmly believe that the proposed Settlement serves the interests of the Class, and is fair, reasonable and adequate.

In examining the fairness of a proposed settlement, the negotiations leading to settlement may also be scrutinized.  Mars Steel v. Continental Ill. Nat'l Bank & Trust, 834 F.2d 677, 681-82 (7th Cir. 1987); Armstrong, 616 F.2d at 314.  In considering class settlements, courts expressly defer to the judgment of experienced counsel who conducted arms-length negotiations.  In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F. Supp. 659, 667 (D. Minn. 1974) (stating that the "recommendation of experienced counsel is entitled to great weight").  See also In re Lease Oil Antitrust Litig., (No. II), 186 F.R.D. 403, 424-25 (S.D. Tex. 1999); Stewart v. Rubin, 948 F. Supp. 1077, 1099 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997); In

re Milken and Assocs. Sec. Litig., 150 F.R.D. 46, 54 (S.D.N.Y. 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.47 at 145-49 (4th ed. 2002).

Evidence that the negotiations here were at arms-length can be found in the duration and intensity of the litigation. The Settlement reflects what counsel believe to be an informed consideration of a vast array of legal and factual issues that have been the subject of this litigation for more than three years. The Settlement is demonstrably non-collusive.

### 4. The Favorable Reaction of the Class to the Settlement Supports its Approval

The number of class members who opt out of a class or who object to a settlement is relevant, though not conclusive, to whether the settlement is reasonable. Petrovic, 200 F.3d at 1152 (identifying "the amount of opposition to the settlement" as a factor for the court to consider in assessing a settlement agreement); DeBoer, 64 F.3d at 1178 (identifying the number of objections by class members to a settlement as one factor to be considered in assessing a settlement agreement). See also Snell v. Allianz Life Ins. Co., No. Civ. 97-2784RLE, 2000 WL 1336640, at *17 (D. Minn. Sept. 8, 2000) ("The absence of substantial opposition to a proposed settlement may be considered as supporting approval of that accord").

Notices of Settlement and Proof of Claims have been mailed to at least 8,370 potential Class members. See Digiovanni Aff. ¶¶ 3-8. As of the date of this Memorandum, not a single Class member has stated an objection to the Settlement or to counsel's request for fees and expenses and not one Class member has opted out of the

Class.   The positive reaction of the Class weighs heavily in favor of final Settlement approval.

**5.     The Case was Settled by Parties Thoroughly Conversant with the Strengths and Weaknesses of the Case**

Approval of the Settlement is also supported by the fact that the Settlement was reached at an advanced stage of the proceeding.   In re Mego Fin. Corp. Sec. Litig., 213 F.3d. 454, 458 (9th Cir. 2000); Armstrong v. Bd. of Sch. Directors, 616 F. 2d at 325; Holden, 665 F. Supp. at 1423.   The parties entered into the Settlement following the completion of extensive discovery and briefing.   Plaintiff's counsel carefully researched the relevant law and reviewed and digested hundreds of thousands of pages of documents while also taking numerous depositions prior to the commencement of settlement negotiations.   The parties thus had a thorough understanding of the claims and defenses at the time the case was resolved.

**D.     The Plan of Allocation**

Approval of a plan of allocation for a settlement fund in a class action is governed by the same standards of review applicable to the settlement as a whole - - namely, "the distribution plan must be fair, reasonable and adequate."   In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000) (quoting In re Computron Software, Inc., 6 F. Supp. 2d 313, 321 (D.N.J. 1998)).   See also In re Citric Acid Antitrust Litig., 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).   Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. Ikon, 194 F.R.D. at 184.   See also In re Citric Acid Antitrust Litig., 145 F. Supp. 2d at 1154 (citation omitted); Law v. Nat'l Collegiate Athletic Ass'n, 108 F. Supp. 2d 1193,

1196 (D. Kan. 2000) (citation omitted). A plan of allocation is held to be reasonable where claimants are reimbursed at various percentages for their defined losses based upon when they bought and sold stock. Ikon, 194 F.R.D. at 184-85. A plan of allocation is also held to be fair where claimants receive a pro rata share of the settlement fund "based upon the ratio of his or her claim to the total number of claims received." Krangel v. Golden Rule Res., Ltd., 194 F.R.D. 501, 509 (E.D. Pa. 2000).

Here, the Plan of Allocation requires that the Net Settlement Fund be distributed to members of the Class who file valid claims on a pro rata basis. Claims are calculated by determining the overall loss each claimant suffered, based on the level of artificial inflation in the prices of Chronimed common stock, as estimated by Lead Plaintiff's damages expert. See Affidavit of Frank C. Torchio, attached as Exhibit K to the Fishbein Aff. This loss is then compared to the combined loss of all claimants to determine the individual member's loss percentage of the total Class-wide loss. This percentage is then applied to the total funds available for distribution, in order to calculate each claimant's recovery.

The Net Settlement Fund will be divided among members of the Class who file valid, timely claims, based on the percentage of their individual loss in relation to the overall claimed losses. All claims will be verified and calculated by the Claims Administrator. The Plan of Allocation is thus fair, reasonable and adequate, and therefore should be approved.

## II.   THE REQUESTED PAYMENT OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE UNDER APPLICABLE LEGAL STANDARDS

Plaintiff's counsel assumed great risk in prosecuting this litigation entirely on a contingency-fee basis. Bearing that risk and facing formidable obstacles in this complex litigation, Plaintiff's counsel persevered to successfully achieve an all-cash settlement of $2.2 million for the Class. Because of the complexity of the case, the Defendants' aggressive posture in asserting their defenses, substantial discovery and lengthy negotiations, the pre-trial proceedings in this litigation have been extensive and expensive.

As compensation for their efforts, Plaintiff's counsel request that the Court award them attorneys' fees of 25% of the Gross Settlement Fund and reimbursement of expenses in the amount of $ 135,000. Plaintiff's counsel's percentage fee request is consistent with the Settlement Notice and is in accord with decisions in this Circuit and other jurisdictions. The percentage fee requested is the appropriate method of compensating Plaintiff's counsel for the result they have obtained for the Class.

Confirming the reasonableness of the fee and expense request is the favorable reaction by the members of the Class. Pursuant to the Preliminary Approval Order, at least 8,370 copies of the Notice were sent to the prospective members of the Class. See Digiovanni Aff. at ¶¶ 3-8. Not a single objection to the request for attorneys' fees and expenses has been received and the time for serving and filing any such objections has expired.

### A.    A Percentage of the Recovery is an Appropriate Measure of a Reasonable Fee

Under the long-established common fund doctrine, attorneys who succeed in creating a fund for the benefit of members of a class who have suffered a common injury are entitled to compensation from the fund. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Internal Imp. Fund Trustees v. Greenough, 105 U.S. 527, 533 (1881). Thus:

> a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole . . . This doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.

In re Gould Sec. Litig., 727 F. Supp. 1201, 1202-3 (N.D. Ill. 1989). The common fund doctrine rests on the equitable principle that persons in a class who receive the benefit of a lawsuit without contributing to its cost would be unjustly enriched. Boeing Co., 444 U.S. at 478. Assessing fees against the common fund spreads the cost of representation proportionately among those benefited. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393-94 (1970).

For more than a century, the Supreme Court has consistently held that common fund fee awards should be a percentage of the recovered fund. See, e.g., Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 164 (1939); Cent. R.R. & Banking Co. v. Pettus, 113 U.S. 116, 123 (1885); see also Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 773 (11th Cir. 1991) ("every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). Accordingly, the Eighth Circuit Court of Appeals has specifically endorsed the

percentage approach.  Petrovic, 200 F.3d at 1157 ("It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement.").

Courts in this District have routinely awarded more than the 25 percent sought here and in fact have very often awarded one-third or more in attorneys' fees in complex litigation that resulted in the recovery of a common fund.  KK Motors v. Brunswick Corp., Civ. No. 98-2307-JRT (D. Minn. Mar. 6, 2000) (awarding one-third of fund) (Fishbein Aff. Ex. C); Steiner v. CDSI, Civ. No. 98-1489-RHK (D. Minn. Aug. 25, 1999) (awarding 33 1/3% of fund) (Fishbein Aff. Ex. D); In re Ancor Communications, Inc. Sec. Litig., Master File No. 97-CV-1696 ADM/JGL (D. Minn. Feb. 5, 1999) (awarding 33 1/3% of fund) (Fishbein Aff. Ex. E); In re Airline Ticket Comm'n Antitrust Litig., 953 F. Supp. 280, 281 (D. Minn. 1997) (JMR) (awarding 33 1/3% of fund); In re LaserMaster Technologies, Inc. Sec. Litig., Civ. No. 4-95-631-RHK (D. Minn. Oct. 9, 1997) (awarding 33 1/3% of fund) (Fishbein Aff. Ex. F); First Presbyterian Church v. John G. Kinnard & Co., Civ. No. 3-94-1024 (D. Minn. Dec. 12, 1995) (awarding 33 1/3% of fund) (Fishbein Aff. Ex. G); In re Control Data Sec. Litig., Civ. No. 3-85-1341-JMR (D. Minn. Sept. 21, 1994) (awarding 36.96% of fund) (Fishbein Aff. Ex. H); In re Employee Benefits Plans Sec. Litig., 1993 WL 330595 at *6-7 (awarding 33 1/3% of fund) (Fishbein Aff. Ex. I).  See also In re Monosodium Glutamate Antitrust Litig., Civ. No. 00-MDL-1328 (PAM) (D. Minn. Feb. 6, 2003) (awarding 33 1/3% of fund) (Fishbein Aff. Ex. J).

Thus, the request for a percentage award of attorneys' fees made in this Application is consistent with awards of fees made in numerous other cases in which a common fund has been recovered by the efforts of counsel for the benefit of a class.  In fact, because it is less than the amount often awarded, it is patently reasonable as a percentage.

### B.    The Fee Request Is Also Appropriate Under the Lodestar/Multiplier Approach

As discussed above, courts sometimes use a lodestar/multiplier calculation as a "cross-check" or to compute the fee award.  See, e.g., In re Monosodium Glutamate Antitrust Litig., Civ. No. 00-MDL-1328; Petrovic, 200 F.3d at 1157.  Under that method of analysis, lawyers' hours are multiplied by hourly rates and then multiplied by a factor to account for the risk involved and result achieved.  In the present case, a review of the lodestar/multiplier data confirms the reasonableness of the requested award, as Plaintiff's counsel are seeking less than the time charges incurred in this hard-fought multi-year litigation.

Collectively, Lead Counsel and Liaison Counsel for the Plaintiff have expended 1,601.75 hours of attorney and paralegal time for a total lodestar of $596,926.25.  Charts attached as Exhibits A to the Fishbein Affidavit and the Affidavit of Daniel L. Berger ("Berger Aff.") list the attorneys and legal assistants who worked on the matter and the number of hours billed.  See Fishbein Aff. at ¶¶ 3, 5, Ex. A; Berger Aff. at ¶¶ 3, 5, Ex. A.

An award of 25% of the Gross Settlement Fund would mean an award of $550,000.  This amount would represent only about 92 % of Plaintiff's counsel's overall

lodestar.  The lodestar/multiplier analysis thus readily supports the reasonableness of the requested fee.

### C.   Other Relevant Factors Justifying the Fee Award

#### 1.   The Result Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); In re King Res. Co. Sec. Litig., 420 F. Supp. 610, 630 (D. Colo. 1976); Behrens v. Wometco Enter., Inc., 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990).

Here, a settlement fund of $2,200,000 in cash has been obtained solely through the efforts of Plaintiff's Lead Counsel and Liaison Counsel without the assistance of any regulatory agency or the necessity of trial.  As detailed in the discussion of the fairness of the Settlement, Plaintiff's case faced substantial legal, factual and practical obstacles. Although Plaintiff and Plaintiff's counsel believe that Plaintiff would have prevailed on all claims at trial and on appeal, counsel also recognizes that any litigation is fraught with risk.  Even if Plaintiff were to succeed at trial, an appellate court might reverse on any of the numerous issues that Defendants would raise in an appeal.

#### 2.   The Contingent Nature of the Representation

It has been a long-recognized rule that an attorney is entitled to a much larger fee when the compensation is contingent than when it is fixed on a time or contractual basis. Indeed, as stated in In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig., 724 F. Supp. 160, 164 (S.D.N.Y. 1989), the "contingent fee risk is the single most important factor in awarding a multiplier."

The contingency multiplier is based on elementary considerations of fairness and justice. As explained by the Fourth Circuit in McKittrick v. Gardner, 378 F.2d 872 (4th Cir. 1967):

> The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services.

Id. at 875.

These considerations support the fee award sought for Plaintiff's counsel. They have litigated for years on a contingent-fee basis against determined opposition and achieved an excellent result for the Class. See Employee Benefits Plans Sec. Litig., 1993 WL 330595 at **22-23 (awarding 33 1/3% and noting "counsel's willingness to pursue this action, despite its risks, on a contingency basis"). Here, because Plaintiff's counsel are requesting a slight discount from their lodestar, they will experience a negative multiplier. Thus, the contingent nature of the representation also supports the requested fee award.

### 3.     The Complexity of the Litigation

Nationwide class actions are rarely simple matters, and this case was no exception. See Rasterops Corp. Sec. Litig., [1992-93 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,445, at 96,489 (N.D. Cal. Jan. 6, 1993); Clark v. Lomas & Nettleton Fin. Corp., 79 F.R.D. 641, 654 (N.D. Tex. 1978), vacated on other grounds, 625 F.2d 49 (5th Cir. 1980) (noting that a securities case "by its very nature is a complex animal").

Plaintiff's counsel encountered and dealt with complex issues at various stages of this litigation, including the motion to dismiss and in conducting extensive discovery.

There is no doubt that Plaintiff's counsel took on a challenge in pursuing this class action. Had this settlement not been achieved, issues would have been raised in connection with Plaintiff's efforts to prove Defendants' liability, causation and damages, and these complex and technical factual and legal questions would have been the subject of substantial research, analysis, as well as additional motion practice and trial.

### 4.   The Skill Required and the Quality of Work.

The skill, experience and quality of work of Plaintiff's counsel are also important factors in setting a fair fee.  As demonstrated by the history of the case, Plaintiff's counsel are skilled and experienced, and they have devoted the effort and time necessitated by the circumstances of the case, including the complexity of the liability and damages issues, the class certification issues, and the significant amount of party and non-party discovery.  Prosecuting the Plaintiff's case effectively required lawyers with exceptional legal skill and experience in complex and class litigation.  See Fishbein Aff. at ¶ 4, Ex. B; Berger Aff. at ¶ 4, Ex. B.  Plaintiff's counsel has prosecuted this case efficiently and achieved an excellent result.

### D.   The Request Properly Includes an Award of the Expenses Incurred by Plaintiff's Counsel

Plaintiff's counsel also request the reimbursement of expenses incurred in pursuing this litigation and obtaining the Settlement.  The Settlement Notice informed members of the Class that Plaintiff's counsel would apply for reimbursement of out-of-pocket expenses of up to $135,000.  The expenses for which Plaintiff's counsel now seek reimbursement, totaling $135,000, are summarized by category in the Fishbein Affidavit at ¶¶ 7, 8, 9 and 10, and in the Berger Affidavit at ¶¶ 7, 8.  The total expenses incurred

total $168,397.64.[3]   Of that amount, $131,026.67 was incurred by Lead and Liaison Counsel and $37,370.97 was incurred by other counsel.  Fishbein Aff. at ¶ 9.

Reimbursement from the common fund of the expenses of counsel whose efforts produced the recovery is appropriate and customary.  See, e.g., Jorstad v. IDS Realty Trust, 643 F.2d 1305, 1315 (8th Cir. 1981); Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991); In re Airline Ticket Comm'n Antitrust Litig., 953 F. Supp. 280, 286 (D. Minn. 1997); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 534 (E.D. Pa. 1990).   Accordingly, Plaintiff's counsel's request for reimbursement of expenses should be granted.

## CONCLUSION

For all of the reasons stated above, Plaintiff respectfully requests that the Settlement be approved, that the Plan of Allocation be approved and that final judgment be entered.

In addition, Plaintiff respectfully submits that the requested attorneys' fees and expenses for which reimbursement is sought are fair and reasonable under the applicable legal standards, and should be awarded by the Court.

Dated:  June 15, 2004                    **s/Gregory J. Myers**
                                          Richard A. Lockridge
                                          Bar No.:  64117
                                          Gregg M. Fishbein
                                          Bar No.:  202009
                                          Gregory J. Myers
                                          Bar No.: 287398

---

[3]   While total expenses exceed $135,000, Plaintiff's counsel is only seeking reimbursement for $135,000 of those expenses since that is what the parties agreed to in the Stipulation and Agreement of Settlement and is consistent with what the Notice of Pendency and Summary Notice said would be sought in this case.

Attorneys for Plaintiff
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave. South, Suite 2200
Minneapolis, MN  55401
Telephone:  (612) 339-6900
Fax:  (612) 339-0981

Daniel L. Berger
Jeffrey N. Leibell
Avi Josefson
Attorneys for Plaintiff
BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP
1285 Avenue of the Americas, 33rd Floor
New York, NY  10019
Telephone:  (212) 554-1400