**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| IN RE CHRONIMED INC. SECURITIES LITIGATION | ) ) ) | Master File No. 01-CV-1092 (DWF/AJB) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) | |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ORDER**
**<u>AUTHORIZING DISTRIBUTION OF NET SETTLEMENT FUND</u>**

Lead Plaintiff, by its attorneys, respectfully submits this memorandum in support of its Motion for an Order Authorizing Distribution of Net Settlement Fund in the above-captioned litigation ("the Action"). In order to effectuate distribution of the In re Chronimed, Inc. Securities Litigation Net Settlement Fund to Class Members who filed valid claims against the Fund, Lead Plaintiff's Counsel respectfully request that the Court enter an Order:

1. Approving the determinations made by the Claims Administrator, The Garden City Group, Inc. ("GCG"), to accept or reject claims, including approving the acceptance of 29 claims that were postmarked after the August 18, 2004 deadline;

2. Approving payment from the $135,000 earmarked for costs and expenses associated with the administration of the Settlement of $114,986.53 for the Claims Administrator's incurred and anticipated fees and expenses associated with the administration of the Settlement.

3. Authorizing and directing the distribution of the Net Settlement Fund to claimants who filed valid claims;

4. Authorizing the destruction of paper copies of Proof of Claim forms and all supporting documentation one year after distribution of the Net Settlement Fund and the destruction of electronic copies of the same three years after the distribution of the Net Settlement Fund; and

5. If any funds remain in the Net Settlement Fund one year after the initial distribution to claimants and after the Claims Administrator has made reasonable and diligent efforts to contact claimants who have not cashed checks, authorizing the Claims Administrator to:

a. if practical, re-distribute the remaining funds to Class Members who have cashed their initial distribution checks and who would receive at least $10 from such re-distribution and, six months after any such re-distribution, donate any funds remaining in the Net Settlement Fund to the Fund for the Legal Aid Society and close all Settlement Fund bank accounts; or

b. if redistribution described in paragraph 5(a) is not practical, donate any remaining funds to the Fund for the Legal Aid Society and close all accounts relating to the Chronimed Inc. Securities Litigation settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. THE LITIGATION AND SETTLEMENT.

This litigation was commenced with the filing of several complaints beginning on June 15, 2001. On September 24, 2001, all cases were consolidated under the above caption by order of this Court, and the Court appointed Third Point Partners Management as Lead Plaintiff, and approved the law firms Bernstein Litowitz Berger & Grossmann LLP and Lockridge Grindal Nauen P.L.L.P. as Lead Plaintiff's Counsel.

On November 8, 2001, Lead Plaintiff filed an Amended & Consolidated Class Action Complaint (the "Complaint") asserting claims for relief against Chronimed and Individual Defendants Maurice Taylor, II, Henry F. Blissenbach and Gregory H. Keane under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

Beginning in 2003, the parties engaged in settlement discussions and ultimately entered into a Stipulation and Agreement of Settlement on March 11, 2004. The Court preliminarily approved the Settlement by order dated March 15, 2004. By the same order, the Court certified this Action as a class action. The Class consists of all persons and entities who purchased or otherwise acquired the common stock of Chronimed Inc. from October 27, 1999, through June 13, 2001, inclusive (the "Class Period"). Excluded from the Class are the Defendants, the members of the family of each of the Individual Defendants, offices and/or directors of Chronimed, parents, subsidiaries and affiliates of Chronimed, and the legal representatives, agents, affiliates, heirs, successors-in-interest

or assigns of any such excluded party. The Settlement included a $2.2 million cash payment by Defendants.

At the same time that it preliminarily approved the settlement, the Court 1) directed distribution to Class members the Notice of Pendency of Class Action, Hearing on Proposed Settlement and Attorneys Fee Petition and Right to Share in Settlement Fund; the Proof of Claim ("Notice of Pendency"); 2) directed publication of a Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing ("Summary Notice") in The Wall Street Journal; and 3) directed distribution of the proposed form of Proof of Claim form ("Proof of Claim") to potential Class members with the Notice of Pendency. The Claims Administrator, GCG, distributed the Court-approved Notice of Pendency and Proof of Claim (collectively, the "Claim Packet") to potential members of the Class commencing on March 29, 2004. Affidavit of Jack R. DiGiovanni ("DiGiovanni Aff.") at ¶ 2. Further, GCG Communications, the media division of GCG, caused the Summary Notice to be published in the Wall Street Journal on April 2, 2004. Id.

Following a hearing held on June 18, 2004 for final approval of the Settlement in this Action, the Court, by order dated June 21, 2004, approved the Settlement as fair, reasonable and adequate and entered Final Judgment.

## II. SETTLEMENT FUND AND CLAIMS ADMINISTRATION.

A total of 1,029 persons submitted claims against the Net Settlement Fund, of which a total of 529 were accepted by the Claims Administrator as Authorized Claimants, with total Recognized Losses of $10,970,897.12. DiGiovanni Aff. at ¶¶ 14, 19. In order

to prepare to process the Proofs of Claim submitted, the Claims Administrator conferred with Lead Plaintiff's Counsel to define the project and guidelines for claims processing, trained staff in the specifics of the project and developed programs for entry of the claimants' personal and transactional information identifications and their transaction information. DiGiovanni Aff. at ¶ 4.

For example, GCG's computer staff designed, implemented several programs for use in settlement administration, including: data entry screens to store claim information, including all transactional data included on each Proof of Claim; programs to load and analyze transactional data submitted electronically; a calculation program to analyze the transactional data for all claims and calculate the Recognized Loss based on the Plan of Allocation; programs to generate various reports throughout and at the conclusion of the settlement administration process; and check writing programs. DiGiovanni Aff. at ¶ 18.

The Claims Administrator sorted incoming mail into Proofs of Claim and administrative mail, which included all mail other than Proofs of Claim and supporting documentation and responses to deficiency letters such as requests for claim forms, requests for change of address, questions regarding the administration process or status of the administration. DiGiovanni Aff. at ¶ 5. If the Post Office returned Claim Packets as undeliverable, GCG reviewed for better addresses and, if available, entered new addresses into the database and mailed new Claim Packets to the updated addresses. Id.

After opening the Proofs of Claim and scanning them into a database along with all other submitted documentation, GCG assigned each Proof of Claim individual numbers and entered the information from each form, including the claimant's name,

address, Taxpayer I.D. or Social Security Number and the purchase and sale transactions listed on the claim into a computerized database. Id. DiGiovanni Aff. at ¶ 6.

GCG also reviewed the documentation provided in support of each claim to ascertain whether the claimant had in fact purchased or otherwise acquired the common stock of Chronimed between October 27, 1999 and June 13, 2001. Id. GCG also reviewed the Proofs of Claim to be sure they were not from the Defendants; the Individual Defendants' family members; Chronimed's officers and/or directors; Chronimed's parents, subsidiaries or affiliates; or the legal representatives, agents, affiliates, heirs, successors-in-interest; or the assigns of any such excluded party. Id.

If a submitted claim lacked the required filing information or documentation to substantiate the Class Member's transactions during the Class Period, or was otherwise ineligible, in whole or in part, GCG sent a Notice of Deficiency to the claimant to advise him or her of the deficiency and request the claimant submit the appropriate documentary evidence to correct the defect. Id. at ¶ 7. The deficiency letters informed each claimant that unless the deficiency was corrected within twenty (20) days, his or her claim would be accepted only to the extent of the documentation supplied, or that the claim would be entirely rejected if they had not supplied the required documentation or filing information for any transactions, or the claims was otherwise deficient. Id. at ¶ 8. The Claims Administrator carefully reviewed and evaluated any documentation received in response to the letters and if the response cured the deficiency, GCG updated the database to reflect the changes in the claim. Id. A copy of the Notice of Deficiency is attached to the Affidavit of Jack R. DiGiovanni as Exhibit A.

If the response did not cure the defect or the claimant did not provide the necessary information within the deadline, GCG sent a Final Letter of Rejection to the claimant which gave him or her a final opportunity to cure the deficiency. Id. at ¶ 9. The Final Letter of Rejection advised claimants (i) that their Proof of Claim was still deficient, (ii) what was needed to cure the defect and (iii) that if the deficiency was not cured the claim or portions of the claim that remained deficient would be rejected. Id. A copy of the Final Letter of Rejection is attached to the Affidavit of Jack R. DiGiovanni as Exhibit A.

The Claims Administrator sent an Ineligible letter to claimants who submitted claims which showed that they were ineligible to participate in the Net Settlement Fund in whole or in part (for example, where the claim showed no Recognized Loss from their purchases of Chronimed common stock during the Class Period, or where their purchases were not made within the Class Period) and to claimants who submitted duplicate claims. Id. at ¶ 10. The Ineligible letter advised claimants of their right to have this Court review GCG's administrative determination. Id. at ¶¶ 10-11. No claimant has requested that this Court review GCG's determination to reject a claim. Id. at ¶ 11. A copy of the Ineligible letter is attached to the Affidavit of Jack R. DiGiovanni as Exhibit A.

After GCG had received and evaluated claims based on the claimants' responses, GCG staff again called claimants whose claims were deficient to provide them a final opportunity to cure their claims. If a response to the telephone call cured the deficiency, GCG updated the database to reflect the change.

Of the 1,029 persons or entities who filed claims with GCG, 1,000 were timely and 29 were received after the August 18, 2004 deadline. DiGiovanni Aff. at ¶ 14. A total of 529 of all claims filed were accepted, representing a total Recognized Loss of $10,970,897.12. Id. at ¶¶ 14, 19. GCG has included all eligible claims, whether timely filed or not in the list of Authorized Claimants for this Court's review. Id. A computer printout of all the claims filed is attached to the Affidavit of Jack R. DiGiovanni as Exhibit B.

The Claims Administrator rejected a total of 500 claims, including 62 claims which did not fit the definition of the Class, 23 duplicate claims, 69 claims with deficiencies that were never cured and 346 claims which did not result in a recognized loss. Id. at ¶ 15.

If the Court grants this motion, GCG staff will next calculate the pro rata distribution amounts from the Net Settlement Fund, prepare checks and check registers and mail checks by prepaid first class mail; issue replacement checks upon request by payee; and answer inquiries about claim calculation and checks. Id. at ¶ 23. GCG also intends to destroy paper copies of Proof of Claim forms and all supporting documentation one year after distribution of the Net Settlement Fund and destroy electronic copies of the same three years after the distribution of the Net Settlement Fund. DiGiovanni Aff. at ¶25.

In its role as Claims Administrator, GCG has incurred, or will incur, fees and expenses in the amount of $114,986.53. DiGiovanni Aff. at ¶ 24, Exhibit C.

## DISCUSSION

## I. APPROVING THE CLAIMS ADMINISTRATOR'S DETERMINATIONS.

The Claims Administrator reviewed claims submitted by a total of 1,029 persons and entities. The Claims Administrator developed computer programs to manage data related to the claimants. Ultimately, the Claims Administrator accepted 529 claims with a total Recognized Loss of $10,970,897.12. Lead Plaintiff's Counsel now requests the Court's permission to pay each of these valid claims, including the 29 claims which arrived after the August 18, 2004 deadline so that no valid claim will be rejected simply because it was late. A list of all the Authorized Claimants is included as part of Exhibit B to the Affidavit of Jack R. DiGiovanni.

Lead Plaintiff's Counsel also requests that the Court approve the Claims Administrator's decision to reject 500 claims. Claims were determined to be invalid because they, for example, did not fit the definition of the Class, were duplicate claims, had deficiencies that were never cured and did not result in a recognized loss. All claimants whose claims were rejected were given ample opportunity to cure their deficiencies. All were also advised that their claims were being rejected and given an opportunity to challenge that determination in this Court. No claimant whose claim has been rejected has requested this Court's review of the rejection of his or her claim. A list of all the ineligible or rejected claimants is included as part of Exhibit B to the Affidavit of Jack R. DiGiovanni.

The claims Administrator's determination should be approved.

## II. FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR.

The Claims Administrator's review and processing of more than 1,000 claims has been long and arduous. The Claims Administrator has expended considerable time and resources in administering claims, attempting to be as inclusive as possible, while also acting in a way that was fair and equitable to all claimants.

GCG's fees and expenses cover all of its services rendered in connection with giving notice, processing claims and distributing the Net Settlement Fund to claimants, including, but not limited to (a) creating databases and developing computer programs; (b) arranging for the printing and mailing of the Claim Packets; (c) reviewing and analyzing submitted claims; (d) contacting claimants with deficiencies and updating the databases as necessary; and (e) calculating the Recognized Losses for ultimate distribution of the Net Settlement Fund.

At the time of settlement, $135,000 of the Gross Settlement Fund was earmarked for settlement administration. To date, GCG has incurred and expects to incur a total of $114,986.53 in fees and expenses for its work as Claims Administrator. A breakdown of those fees and expenses are set forth in the Affidavit of Jack R. DiGiovanni at Exhibit C. All of these fees and expenses are necessary and reasonable to effective settlement administration. Because GCG expended less than the $135,000 earmarked for Settlement administration, the balance of $20,013.47 ($135,000 minus $114,986.53) will become part of the Net Settlement Fund available for distribution to claimants.

Accordingly, Lead Plaintiff's Counsel respectfully requests that the Court approve GCG's compensation for its time and expenses as described above in the amount of $114,986.53.

## III. **DISTRIBUTION OF FUNDS TO CLAIMANTS WHO FILED VALID CLAIMS.**

Lead Plaintiff's Counsel seeks the Court's authorization for the Claims Administrator to distribute the Net Settlement Fund to claimants who filed valid claims.

## IV. **THE CLAIMS ADMINISTRATOR'S RECORD RETENTION AND DESTRUCTION PLAN.**

Once the claimants are paid, the Claims Administrator will have no need or use for the Proof of Claim forms or related paper or electronic records. Retaining them will simply be a burden to GCG. In order to relieve GCG of that burden and in order to prevent any dispute about GCG's obligation to retain records, Lead Plaintiff's Counsel requests that the Court's Order include a provision authorizing the destruction of paper copies of Proof of Claim forms and all supporting documentation one year after distribution of the Net Settlement Fund and the destruction of electronic copies of the same three years after the distribution of the Net Settlement Fund.

## V. **PERMISSION TO RE-DISTRIBUTE AND MAKE DONATION TO CHARITY.**

In order to ensure that all of the Net Settlement Fund is distributed, Lead Plaintiff's Counsel request authorization to donate unclaimed funds to charity.

The requested donation would not occur until one year after the distribution requested herein is made. At that time, the Claims Administrator will make reasonable

and diligent efforts to contact any check recipients who have not cashed their checks, and encourage them to do so. In addition, the Claims Administrator will determine whether a second distribution is practical. If there are sufficient residual funds to perform a second distribution, the Claims Administrator will make a second distribution to claimants who have cashed their initial distribution checks and who would receive at least $10 from a second distribution. Six months after the second distribution, should it occur, any remaining amounts in the Settlement Fund's account will be donated to the Fund for the Legal Aid Society and the Settlement Fund's account will be closed. If a second distribution is not practical, one year after the distribution, any remaining amounts in the Settlement Fund's account will be donated to the Fund for the Legal Aid Society and the account will be closed. Lead Plaintiff's Counsel are requesting that the Court's Order include such a provision that will allow for a second distribution, if practical, and for donation of residual funds to charity so that the Settlement Fund's account may be closed.

## CONCLUSION

For all of the reasons stated above, Lead Plaintiff's Counsel respectfully requests that this motion be granted in all respects.

Dated: May 6, 2005

**s/ Gregory J. Myers**
Richard A. Lockridge
Bar No.: 64117
Gregg M. Fishbein
Bar No.: 202009
Gregory J. Myers
Bar No.: 287398
Attorneys for Plaintiff
LOCKRIDGE GRINDAL NAUEN P.L.L.P.

100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981

Daniel L. Berger
Jeffrey N. Leibell
Avi Josefson
Attorneys for Plaintiff
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas, 33rd Floor
New York, NY 10019
Telephone: (212) 554-1400